**STATE, Plaintiff-Appellee, v. ROBERTS, Defendant-Appellant**

Ohio Appeals, Second District, Champaign County.

No. 132.   Decided February 8, 1955.

Richard P. Faulkner, Prosecuting Attorney, Urbana, for plaintiff-appellee.

J. Harvey Crow, Cleveland, for defendant-appellant.

## OPINION

By THE COURT:

This is an appeal from sentence and judgment upon a verdict of a jury of guilt on a charge that the defendant sold certain property of The Citizen's National Bank of Urbana, Ohio, and appropriated the proceeds with intent to defraud.

Twelve errors are assigned.

The State's claim based on the indictment, was that the defendant on March 13, 1950, had given a note for $1400 payable to The Citizen's National Bank of Urbana, Ohio. That by the terms of the note the title and right of possession to certain items mentioned thereon were in the bank and that the chattel property was delivered to the defendant in Trust for the bank. The property was specifically described in the note consisting of certain farm machinery and three dairy heifers, one-half interest in three dairy cows, one-half interest in 33 ewes and the increase. The indictment charged that defendant unlawfully and fraudulently sold and disposed of the chattel property held in Trust which includes the machinery, and converted the proceeds of the sale to his own use with intent to defraud the bank. A bill of particulars disclosed that the proof would show that the chattels sold were the live stock only.

The defense was a general plea of not guilty with the specific contention that at the time the $1400 note was signed by the defendant, there was no designation of any personal property thereon. That it was understood between the president of the bank, and the defendant that there was to be written in to the note the same list of property that had theretofore been carried in another, and though bearing the same date, an earlier note for $1000, describing only farm machinery, and that the listing of the stock was unauthorized. Defendant's testimony was supported by his wife to the effect that the note was in blank insofar as the listing of any property was concerned when her husband and she, a co-signer, signed it. It was also contended that there was no showing of any fraudulent intent in the sale of the property and the appropriation of the proceeds.

Without comment, we determine several of the errors assigned. One, the verdict is against the weight of the evidence. Seven, error in overruling defendant's motion for directed verdict at the close of the State's case. Eight, error in refusal to withdraw a juror when said juror showed a special affinity to the prosecuting witness. Nine, error because the Court showed a special bias in favor of the State and against the defendant. Ten, that the orders of the Court were in violation of the Constitution of Ohio and the Constitution of the United States and amendments thereto. Eleven, abuse of discretion by the Court by reason of which the defendant was prevented from having a fair trial. No one of these assignments is well made.

The other assignments require extended comment.

The third error assigned is that the Court admitted evidence prejudicial to the defendant over his objection. The evidence to which the

assignment is directed was offered by Walter Allison, Superintendent of Farm Management, Inc., who rented the farm to defendant as agent of the owners of the land. Mr. Allison was Superintendent of the farm for 1951, but says he took over the management the first of February, 1951. Defendant's tenancy on the farm expired March 1, 1951, although he lived there some little time thereafter. Prior to Mr. Allison taking over the duties of Superintendent, Charles Neer so acted.

Mr. Allison testified that certain corn raised on the land in 1950 was owned 50-50 by the owners of the land and the defendant; that defendant sold corn of the value of $1682.27, during a period from December 30, 1950 to January 7, 1951 and did not make settlement for it. When this line of testimony was first sought to be developed the Court hesitated about admitting it because he wanted to make certain that the corn was included in the property described in the $1400 note. Thereafter, however, upon a conference with counsel, the Court admitted the testimony with this statement in the presence of the jury:

"Similar transactions to show a plan or a scheme. You may proceed."

Thereafter, Mr. Neer, who was Superintendent to the first of the year 1951 testified that he was informed by the defendant that corn (at the elevator where Mr. Allison said the corn had been sold) had been sold and that he then authorized the defendant to draw the proceeds and to settle for them later and that he would get this money from the crops. This conversation was in December 1950.

If the foregoing evidence could be said to be admissible under §2945.59 R. C., it would be to show the acts tending to establish fraudulent intent and not for the purpose for which the Court admitted it, viz, a similar transaction to show a scheme or plan. See **State v. Hahn, 59 Oh Ap 178, Syl. 1** and **page 183. Whiteman v. State, 119 Oh St 285, 293, 294.**

Certain material facts were not in dispute in this case. It was admitted that the defendant had given the bank the note for $1400, but not on the date appearing thereon, but sometime later. It was admitted that the designated farm implements were properly written in to the note and that the title to them was not in dispute. It was admitted that the $1400 note had not been paid and that there was a balance due of about $800. It was testified and defendant admitted that he had sold the corn and used the proceeds for his own purpose. There were definite issues, however, on the question whether or not the livestock as named was properly written into the note or sold without authorization. If the livestock was written in the note, without authorization, of course, the defendant was not chargeable with any offense in selling this property. In any event, the intent of the defendant in selling the stock, if he sold it in contravention of the contract set out in the note, became a material element of the offense which it was incumbent upon the State to prove. The Court properly so charged the jury in the general charge but said nothing of the purpose for which the proof of other acts was admitted, except at the time it was admitted.

As early as **Baxter v. State, 91 Oh St 167**, it was held that the trial judge not only should limit testimony of other acts or offenses when admitted, to the proof of intent with which the act charged was committed,

but should at the time the testimony was admitted, instruct the jury the purpose for which it was accepted. This latter requirement has since been abrogated in **Scott v. State, 107 Oh St 475.** However, the general effect and purpose of the admission of other acts tending to show intent is discussed in the Baxter case, at Page **171:**

"While evidence of other offenses is competent for the purpose of showing intent when criminal intent is a specific element of the crime charged, yet this evidence is of a highly dangerous character and should be admitted with great caution. A jury is never authorized to consider this evidence whatever until after it has found, from the other evidence in the case, that the defendant has committed the acts charged in the indictment. Evidence of other offenses may then be considered by the jury for the sole purpose of determining the intent of the accused at the time of the commission of the acts charged, and it is the duty of the trial court to so charge the jury at the time such evidence is admitted."

It is necessary that the jury be instructed as to the limited purpose for which this evidence is admitted.

The first syllabus of **State v. Moore, 149 Oh St 226** defines the acts that may be shown on the question of intent:

"The like acts or other acts which may be shown against the defendant in a criminal case, within the contemplation of §13444-19 GC, are acts of a character so related to the offense for which the defendant is on trial that they have a logical connection therewith and may reasonably disclose a motive or purpose for the commission of such offense."

Acts other than the one charged in the indictment which are admitted for the purpose of showing fraudulent intent in the commission of the act charged must be proven by substantial evidence. We doubt if the testimony as adduced met that requirement for two reasons.

(1) The proof of the relationship between the owners of the land and the defendant was insufficient to support the conclusion that the defendant had not the right to sell the corn or to use the proceeds therefrom. The contract between the landowners and the defendant under which the corn was grown was not offered. As close as the testimony came to this subject was a statement of Allison that the landowners and the defendant owned the corn 50-50. Thus, this ownership may or may not have been as partners. The Prosecutor asserts that it was that of a partnership. If so, each of the partners was principal and agent for the other. Caplan v. Emery, 14 O. C. C. (N. S.) 186, **McGrath v. Cowen, 57 Oh St 385.** Either partner had the right to sell products of the partnership and in the absence of fraud, under §**1777.01 R. C.,** such act would not be a criminal offense.

(2) The witness Allison, did not say and obviously could not state of his own knowledge that the sale of the corn made prior to February 1951 when he said he took over the management, was unauthorized. Neer, Superintendent, when at least part of the corn was sold, states that the proceeds from the sale were drawn by defendant upon his authorization.

There was no substantial proof of fraudulent conduct by the defendant in connection with the sale of the corn. Allison's statement is insufficient to establish either that the defendant had not the right to

sell the corn, was not authorized to collect the proceeds of the sale, or that the defendant intended to defraud his partner because the records of the owners of the farm disclose that he did not settle for the landlord's share.

It is indeed difficult to determine from the record if the proceeds from the corn which Neer authorized defendant to draw included all that Allison meant to describe in his testimony but to permit the jury to decide this issue would have required mere speculation upon its part.

The fourth assignment of error is directed to the rejection of evidence proffered by the defendant.

Defendant, testifying in his own behalf, offered to show that in the Winter of 1950-1951, he had corn and soy beans in the fields which he had intended to harvest but could not gather because of the inclemency of the weather; that the value of these unharvested crops was corn, $2000, soy beans, $2000, all of which were left on the land when the new owner took over in the Spring of 1951. The Court refused to admit this testimony. This testimony was admissible as reflecting upon the intent of the defendant when he drew the proceeds from the sale of the corn, particularly, as explaining why he was unable, as he and Mr. Neer stated he was obligated to do, to settle with the Farm Company for the proceeds which belonged to his partner, the owners of the land.

Had defendant been able to realize on the value of the corn and beans in the field, he would have had the means to settle with his landlords as he had agreed to do. If he was prevented from payment of his obligation because of circumstances over which he had no control, it was convincing evidence that although he failed to settle for the corn it was without fraudulent intent.

The refusal to admit this evidence was not objected to by the defendant although proffer was made. This did not save the record and the action of the Court could not be the basis of reversal. We discuss it at length inasmuch as the case may be tried again.

It is claimed that the Court erred in refusing to admit certain testimony sought to be adduced on cross-examination of the prosecuting witness, at pages 41, 42, 68, 69 and 72 of the record. This testimony was intended for the purpose of subsequent impeachment of the witness. Of course, the defendant had the right, which was recognized by the trial judge, to lay the foundation for impeachment but to do so, the testimony sought to be impeached must have been specifically directed to the attention of the witness. This requirement was not observed in the questions, answers to which were refused.

In this connection we also support the action of the trial judge in the refusal to accept the full transcript of the record of the testimony of the prosecuting witness in a preliminary hearing on the charge against defendant.

The refusal of the Court to admit certain testimony of Ava DeVore is assigned as error. Although her answers were proffered, no objection was made or exception noted to the rulings of the Court.

The fifth and sixth assignments of error relate to the general charge of the Court and the refusal to give special charges before argument requested by defendant.

There is no mandatory obligation on the Court in a criminal case

to give requested special charges before argument. However, when a trial judge's attention is directed to a sound proposition of law, it must be given either specifically or substantially either by special or general charge. 4 O. Jur. (2d) 362, **Chidester v. State, 25 Oh St 433, Windle v. State, 102 Oh St 439.** Chief Justice Marshall in **Grossweiler v. State, 113 Oh St 48** had this to say:

"It has been settled by this Court in the case of **Wertenberger v. State, 99 Oh St 353,** that under §13675 GC, it is not mandatory upon the Court to give any instruction to the jury in a criminal case before argument. This declaration has never been overruled, and this Court is at this time in full accord with it. That case did not decide, nor has any other case decided by this Court declared, that a request made before argument may be ignored in the general charge. Neither has it ever been declared that it is necessary that the request be renewed after argument."

Defendant requested that the following instruction be given before argument. It was refused and exception noted. Nor was the subject matter of the charge given in any special charge or in the general charge.

"Members of the Jury, I charge you that if you find that the defendant did sign a note to the Citizens National Bank and if you find that said note was signed in blank with instructions to the President of the Citizens National Bank to fill in said note, the same as the first note was filled in, and that the defendant never authorized the Citizens National Bank or their agents, or employees to insert the livestock as is found inserted in said note, then I charge you, as a matter of law, that the defendant is not guilty of the crime charged in the indictment and it is your duty to return a verdict of not guilty."

This charge was correct. It embodied the principal defense that the defendant had interposed to the charge against him. It was prejudicially erroneous not to give it in some form.

There is another matter concerning the scope of permissible testimony from character witnesses. The defendant offered several witnesses to testify as to his general reputation for honesty. While they were on the stand the Prosecutor insisted that this evidence be restricted to what the witness had heard about the defendant. The trial judge supported the contention of the prosecution and in two instances told the witnesses that their testimony must be so restricted. However, defendant did not make his record either by objection or exception. In fairness to counsel and the Court we direct attention to the fact that the examination was too restricted. **Griffin v. State, 14 Oh St 55; State v. Dickerson, 77 Oh St 34, 2nd Syllabus.**

We find the third and fifth and sixth assignments of error taken together established.

The judgment will be reversed and the cause remanded for a new trial.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.